[No. G033173. Fourth Dist., Div. Three. May 31, 2006.]

BETSY LINDSAY et al., Plaintiffs and Appellants, v.
PIOTR LEWANDOWSKI et al., Defendants and Respondents.

## COUNSEL

Christopher L. Blank for Plaintiffs and Appellants Betsy A. Lindsay and Ultrasystems Environmental, Inc.

McQueen & Ashman and James A. McQueen for Plaintiff and Appellant Mike Lindsay.

Dunn, Lee & Keary and Stephen W. Dunn for Defendants and Respondents.

**OPINION**

**BEDSWORTH, J.**—Betsy Lindsay, Michael Lindsay, and Ultrasystems Environmental, Inc. (collectively, Lindsay) appeal from a judgment on a stipulated settlement agreement in favor of Piotr Lewandowski, Joan Lewandowski, and the Hydro Company (collectively, Lewandowski). Lindsay argues the settlement agreement is unenforceable. We agree and reverse.

\* \* \*

In December 2000, the parties signed a stipulation for settlement following private mediation. One version, signed by most of the parties, states "in the event of a dispute as to the terms of the settlement the parties agree to return to the mediator for final resolution by binding arbitration." The words "by binding arbitration" are a typed addition to form language that precedes it. Another version, signed by Michael Lindsay and Mary Bennett, does not have this addition.

Two provisions are at issue. One stated the parties agreed to "binding arbitration" of Ultrasystems Environmental, Inc.'s (Ultrasystems) claims against The Hydro Company (Hydro). The word "arbitration" is typed in above the line, directly above the word "mediation," through which a line is drawn. It was further agreed that any arbitration award for Ultrasystems was to be set off against the amount Lindsay owed Lewandowski.

The other disputed provision is section 3: "Lindsay pays to Lewandowski the sum of $190,000 with cash, payment terms, security arrangements and stipulations regarding non-dischargeability in bankruptcy 'reasonably' agreeable to both parties but to be submitted to 'binding' mediation by Judge R. J. Polis (ret.) if no satisfactory agreement on terms in entered within five days of commencement of negotiations between the parties on this issue." Shortly after the parties signed the stipulation for settlement, Lindsay retained new counsel and took the position it was unenforceable.

In April 2001, Lewandowski moved for judgment on the stipulated settlement. (Code Civ. Proc., § 664.6.)[1] He sought an order compelling arbitration of the Ultrasystems/Hydro claim, binding mediation to resolve the payment terms, and judgment enforcing the settlement. Retired Judge Polis submitted a declaration in support of the motion. It described his retention as mediator, an initial mediation proposal, and his subsequent preparation of the stipulation for settlement. He said "binding mediation" was a procedure he regularly used: "[T]he parties have agreed in advance that in the event the parties fail to agree, I then decide these terms and conditions, typically by asking the parties to each submit to me their final offers, accompanied by their oral argument as to why I should select their version over all others. I then select as the final binding provision the term or terms of either one party or the other." Retired Judge Polis said he described this process to both sides before they signed the stipulation for settlement.

Eventually, the parties agreed to arbitrate the Ultrasystems/Hydro dispute on the understanding Lindsay did not waive her position that the stipulation for settlement was unenforceable. On September 10, 2001, retired Judge Polis, acting as arbitrator, issued an award for Hydro on all issues.

On December 13, 2001, the trial court granted Lewandowski's motion to compel arbitration of the payment terms dispute. The court found "the parties have agreed to an alternate dispute resolution clause," and it ordered them "to return to Judge Robert Polis to resolve their dispute as to the terms of the Stipulation to Settlement, including . . . the meaning of the term ' "binding" mediation' . . . ."

Lindsay responded by attempting to disqualify Judge Polis. On December 17, 2001, she sent Lewandowski a "notice of disqualification of Judge Polis to serve as arbitrator" in the matter. The purported disqualification was based on a rule that "a party shall have the right to disqualify one court appointed arbitrator without cause in any one arbitration . . . ." (Former § 1281.9, subd. (c)(2), eliminated in a 2001 revision which rewrote section 1281.9 and added § 1281.91 by Stats. 2001, ch. 362, §§ 5, 6; the same provision now appears in § 1281.91, subd. (b)(2).) Lewandowski moved to compel adherence with the order to arbitrate. On February 27, 2002, the trial court found the notice of disqualification invalid and ordered the parties to proceed before retired Judge Polis.

---

[1] All subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated.

On April 4, 2002, retired Judge Polis issued a "binding mediation ruling." He concluded "Lindsay shall pay . . . $190,000 in cash forthwith, without any security agreement and without any stipulation regarding an attempt to make that amount dischargeable in bankruptcy since neither are needed with a cash payment." The ruling described the procedure used as follows: " '[B]inding mediation' is simply a normal mediation process . . . within the frame work of an agreement in advance by the parties that any impasse reached shall be resolved by the mediator who will select and propose a compromise figure circumscribed by the last two bargaining positions conveyed before the impasse." At another point, retired Judge Polis said "[b]inding mediation has only one accepted meaning, that is, that the parties who enter intend that there shall be an agreement at the end of it, even if the mediator must make the final call. That was the intent expressed here and that was the result." In a May 16, 2002 response to an inquiry from Lewandowski, retired Judge Polis said the reference to Lindsay in the ruling meant Betsy Lindsay, Michael Lindsay, and Ultrasystems.

Subsequently, the trial court granted Lewandowski's motions to confirm the arbitration award and the binding mediation award, and to enforce the stipulation for settlement. On September 18, 2003, judgment was entered awarding Lewandowski $190,000 against Besty Lindsay, Michael Lindsay, and Ultrasystems, along with other relief in favor of the various parties.

Lindsay argues the stipulation for settlement is unenforceable for several reasons. We conclude one is right—the parties never agreed on a procedure to resolve the payment dispute—and therefore reverse.

■ Section 664.6 provides that where parties to pending litigation stipulate to settle the case orally in court, or in a writing signed outside of court, judgment may be entered "pursuant to the terms of the settlement" upon motion of one of the parties. (§ 664.6.) "A section 664.6 motion is appropriate . . . even when issues relating to the binding nature or terms of the settlement are in dispute, because, in ruling upon the motion, the trial court is empowered to resolve these disputed issues and ultimately determine whether the parties reached a binding mutual accord as to the material terms." (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 905 [30 Cal.Rptr.2d 265, 872 P.2d 1190].)

■ A settlement agreement, like any other contract, is unenforceable if the parties fail to agree on a material term or if a material term is not reasonably certain. (*Weddington Productions, Inc. v. Flick* (1998) 60

Cal.App.4th 793, 811 [71 Cal.Rptr.2d 265]; Civ. Code, § 1580 ["Consent is not mutual, unless the parties all agree upon the same thing in the same sense"]; Civ. Code, § 3390, subd. 5 [contract not specifically enforceable where terms are "not sufficiently certain" to make act to be done "clearly ascertainable"].) Leaving an unresolved term for future agreement is not invariably fatal, since a settlement may be enforceable if the parties agree the remaining issue will be decided by arbitration. (See *Weddington Productions, Inc. v. Flick, supra,* 60 Cal.App.4th at p. 801 ["[P]arties theoretically could confer wide-ranging arbitration authority on an arbitrator, even to the extent of allowing an arbitrator to write a licensing agreement for them."].) But that did not take place here.

We cannot tell what the parties meant when they provided for "binding mediation" of the payment dispute. The settlement began as a mediation. It produced a stipulation for settlement that provides for resolution of "a dispute as to the term of the settlement" by "return[ing] to the mediator for final resolution" (the version signed by Michael Lindsay and Mary Bennett) or "by return[ing] to the mediator for final resolution by binding arbitration" (the version signed by the remaining parties). It goes on to provide for resolution of the Ultrasystems/Hydro dispute by "binding arbitration," and resolution of the payment term dispute by "binding mediation." As to the latter, the reference to binding mediation is at odds with the general proviso for settling a dispute over the settlement terms by returning "to the mediator for final resolution by binding arbitration" (one version).

■ About the only thing that *is* clear is that the parties did not regard binding mediation as the equivalent of arbitration. The stipulation for settlement originally provided for resolution of the Hydro dispute by "binding mediation," but "mediation" is crossed out and "arbitration" inserted in its place. That indicates the parties *did not* consider binding mediation the equivalent of arbitration. Since there was no agreement on a recognized procedure to resolve the payment term dispute, the stipulation for settlement is unenforceable.

Lewandowski argues the inconsistent references to different alternate dispute resolution procedures in the stipulation for settlement are "irrelevant" because section three refers only to binding mediation. But that does not answer the question of what the parties *meant* by binding mediation, and we are left with a contract that is uncertain regarding a material term. Such a contract cannot be enforced.

This resolution precludes any meaningful determination of the viability of the concept of "binding mediation." There is a school of thought—a not altogether unappealing one—that recognizes binding mediation as a perfectly acceptable means of dispute resolution. After all, why can't parties to a mediation provide that if they come to loggerheads on an issue, they agree to a binding resolution by the mediator acting as a arbitrator, under whatever decisionmaking process he/she chooses? A leading commentator has observed that where parties authorize a mediator to render a binding decision upon an impasse in settlement negotiations, "the dispute resolution procedure then becomes, in effect, an arbitration." (Knight et al., Cal. Practice Guide: Alternate Dispute Resolution (The Rutter Group 2004) ¶ 3:12.2, pp. 3–4.)[2] The same conclusion is reached by the only reported decision on the issue of which we are aware. There, a Michigan court concluded "binding mediation is functionally the same as arbitration," and it held a trial court has the same authority to review decisions following binding mediation as arbitration. (*Frain v. Frain* (1995) 213 Mich.App. 509, 511–512 [540 N.W.2d 741].)

But there are significant problems with the concept of binding mediation. While there are recognized rules governing contractual arbitration (§ 1280 et seq.), contractual mediation (Evid. Code, § 1115 et seq.), and court-connected mediation programs (Cal. Rules of Court, rule 1620 et seq.), there are none for binding mediation. The extant rules settle various issues, among them appointment of arbitrators and mediators, disclosure, disqualification, the powers of arbitrators and mediators, procedure, fees, confidentiality, and enforcement. There are also specific rules that deal with mixed alternate dispute resolution, where traditional mediation is followed by binding mediation. (Cal. Rules of Court, rule 1620.7(g).)

If binding mediation is to be recognized, what rules apply? The arbitration rules, the court-ordered mediation rules, the mediation confidentiality rules, or some mix? If only some rules, how is one to choose? Should the trial court take evidence on the parties' intent or understanding in each case? A case-by-case determination that authorizes a "create your own alternate dispute resolution" regime would impose a significant burden on appellate

---

[2] Arbitration has been defined as " '[a] process of dispute resolution in which a neutral third party (arbitrator) renders a decision after a hearing at which both parties have an opportunity to be heard. . . . ' [Citation.]" (*Cheng-Canindin v. Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 684 [57 Cal.Rptr.2d 867].) The characteristics of an arbitration agreement are: "(1) a third party decision maker; (2) a mechanism for ensuring neutrality with respect to the rendering of the decision; (3) a decision maker who is chosen by the parties; (4) an opportunity for both parties to be heard, and (5) a binding decision." (*Ibid.*; accord, *Sy First Family Ltd. Partnership v. Cheung* (1999) 70 Cal.App.4th 1334, 1341–1342 [83 Cal.Rptr.2d 340].)

courts to create a body of law on what can and cannot be done, injecting *more* complexity and litigation into a process aimed at less.

We do not suggest that parties are prohibited from agreeing that, if the mediation fails, they will proceed to arbitration. And, should they so desire, they may agree that the same person may first act as mediator and, if he or she fails in this task, act as the arbitrator. Whether or not this arbitrator (née mediator) may consider facts presented to him or her during the mediation would also have to be specified in any such agreement. All of which serves to underscore how uncertain the terms of the instant "agreement" were.

It will come as no surprise that the members of this panel have strong feelings about the efficacy *vel non* of binding mediation. But their expression here, where we are simply unable to find any meeting of the minds, would be an inappropriate excursion into issues unnecessary to resolution of the case before us.

In light of our conclusion the stipulation for settlement is unenforceable for lack of agreement on a procedure to resolve the payment term dispute, we also do not reach Betsy Lindsay's other arguments against enforcement, or her argument that retired Judge Polis was properly disqualified.

The judgment is reversed. Appellants are entitled to costs on appeal.[3]

Sills, P. J., and Rylaarsdam, J., concurred.

**SILLS, P. J.,** Concurring.—I fully concur in the lead opinion but write separately because the term "binding mediation" is relatively new in the legal lexicon and because it is a deceptive and misleading term. Given that

---

[3] Two motions to augment the record are denied. On August 8, 2004, Lewandowski moved to augment the record with four exhibits, labeled A through D. The motion was granted save for exhibit D, a lost stock certificate affidavit and assignment of Lewandowski's stock in Ultrasystems to Betsy Lindsay, which was left for decision in connection with decision of this appeal. Exhibit D has no bearing on the appeal, and the motion to augment the record to include it is denied.

On November 24, 2004, Lindsay also moved to augment the record, proffering eight exhibits. The motion was granted with the exception of exhibit 8, an acknowledgment of satisfaction of the judgment by Lindsay, which was left for resolution in connection with decision of the appeal. Exhibit 8 likewise has no bearing on the appeal, so the motion to augment by adding it is likewise denied.

numerous court rules empower the judiciary to require attendance and good faith participation in a settlement conference[1]—the old fashioned term for mediation—lawyers may easily think that the term "binding mediation" simply means they are compelled to attend and participate; that's all. They may not realize the term might be interpreted to mean that if a settlement is not reached, then, puff, the mediation becomes an arbitration.

I also write separately to more clearly register the oxymoronic character of the concept of "binding mediation." As lawyers we should use precise language—that is our tradition. A fuzzy PR phrase like "binding mediation" is not worthy of us.

As all of us on this panel noted in *Vedanta Society of So. California v. California Quartet, Ltd.* (2000) 84 Cal.App.4th 517 [100 Cal.Rptr.2d 889], the authors of text (whether legislation, novels or settlement agreements) "generally do not want to contradict themselves—and when they do, their whimsy should be relatively obvious from the text (e.g., 'The sun was shining on the sea/Shining with all his might . . . And this was odd, because it was/The middle of the night.' " (*Id.* at p. 527, fn. 11.) I can think of nothing more self-contradictory than "binding mediation." Mediation is by definition a voluntary process which achieves a voluntary result, and is meaningful in distinction to "arbitration" in its very voluntariness. Or, to put it with more bite—mediation is distinctive from arbitration in its inherent lack of consequences. You go to mediation, you like it, you don't, you settle, you don't, no big deal.

Now, granted, persons can voluntarily agree to a process which yields a result out of their control—the roulette table comes to mind. But when the result of some sort of *adjudication* is "binding," it is "binding" precisely because it is the product of a public (court) or private (arbitration) decision maker ultimately backed up by the government. A private *decision maker* with "binding" power is called an arbitrator. A private decision maker who simply tries to have parties come to some voluntary agreement is a mediator. A mediator with binding power is an arbitrator, not a mediator. (See Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2005) ¶ 3:12.1, p. 3–4 ["Parties sometimes authorize the mediator to render a binding decision in the event an impasse is declared with respect to settlement negotiations. The dispute resolution procedure then becomes, in effect, an arbitration."].)

---

[1] E.g., California Rules of Court, rules 212 and 222. All further references to any court rule are to the California Rules of Court.

Unfortunately, the term "binding mediation" has come into existence because the Madison Avenue and MBA types have taken over what we once called "private judging." Now we call it "alternative dispute resolution" because that is a softer and gentler term and implies that the parties will have their disputes resolved in a way that is mutually satisfactory; not that they will receive a decision from a judge which one of the parties will not like. "Private judging" implies a quasi trial process with all of the tension of a courtroom and the acrimony of litigation. Although, "alternative dispute resolution" is virtually the same thing, it sounds softer. Likewise, "settlement conference" is also a forbidden term. The public relations people like "mediation" because mediation implies that your matter or dispute will be resolved to your satisfaction. The term "settlement conference" sounds like a committee meeting where people get together and talk about a settlement, but nothing might happen. That of course is unacceptable after the parties have spent a lot of money to schedule the meeting. Another term that the public relations people don't like is "arbitration," because arbitration implies that a decision will be made and not necessarily a decision one or both of the parties may like. Hence, "binding mediation" has come into existence because it is kinder and gentler. But as this case demonstrates, it is half-baked arbitration.

The California Rules of Court *define* mediation as a process in which a mediator assists the parties in "reaching a mutually acceptable agreement." (Rule 1620.2(a).) And the voluntary aspect of mediation is further under-scored in rule 1620.3: "A mediator must conduct the mediation in a manner that supports the principles of voluntary participation and self-determination by the parties." The rule goes on to prohibit mediators from "coercing any party to make a decision or to continue to participate in the mediation." (Rule 1620.3(c).)

Besides the self-contradictory nature of the phrase, the "hybrid"[2] concept of a "mediation" which fails to reach a mutually acceptable settlement and then turns into an arbitration where the mediator is also the arbitrator can have unexpected consequences. One of these consequences is that the use of "binding mediation" may actually retard settlement. Judges and lawyers with extensive experience in conducting settlement conferences know that the person conducting the conference frequently hears things from the lawyers

---

[2] One Rutter Practice Guide describes "binding mediation" as a " 'hybrid' " but doesn't elaborate. (See Friedman et al, Cal. Practice Guide: Landlord-Tenant (The Rutter Group 2006) ¶ 1:333 ["Mediation is typically nonbinding (although the parties might agree to a 'hybrid' binding mediation). This form of dispute resolution is particularly suitable to landlord-tenant disputes . . . ."].)

that he would be never hear were he the trial judge or arbitrator. For example, a lawyer might tell a mediator that his client doesn't recognize his exposure and cannot get him to understand the downside of his case. The lawyer will ask, "You can help, I think he will listen to you." Another lawyer might tell a mediator that he can possibly get another $50,000 if the other party will only come down another $100,000 on their demand. Or, both lawyers might tell a mediator what they candidly think their case is worth but ask the mediator to explain to each party the exposures they face so as to get movement toward settlement. But no lawyer in his right mind would ever tell such things to a mediator if he thought it was possible the mediator might become the arbitrator.[3] For that very reason, rule 1620.7(g) requires a mediator to exercise "caution" when combining mediation with other alternative resolution processes and to do so only with the "informed consent of the parties." And, if the mediation can become an arbitration, each party *must* be given opportunity to select "another neutral" to conduct the ensuing proceedings.

Another, perhaps more ominous consequence of the hybridization of mediation and arbitration may be damage to the very quality of justice yielded by the process, in effect having the worst of both worlds—hence rule 1620.7(g)'s admonition to mediators to "exercise caution in combining mediation with other alternative dispute resolution (ADR) processes."

As rule 1620.3 emphasizes, mediations are supposed to reflect a truly voluntary process. They have the advantage that, by definition, they reflect the consent of the parties.

And for their part, arbitrations have the epistemological advantages of a truly adversarial process. Each side has an incentive to present its best case, and the result will not necessarily give either side everything it wants.

But contrast those two ideals with the process contemplated in the very case before us: Parties submit "bids" in the form of settlement offers (and some written argument), and the mediator/arbitrator then selects one. Talk about roulette wheels. What was contemplated here was not "mediation" but simply a low-quality arbitration.

---

[3] We thus may be doing to mediation what Justice Kennard warned stipulated reversals would do to the process of settlement on appeal. (*Neary v. Regents of University of California* (1992) 3 Cal.4th 273, 288–291 [10 Cal.Rptr.2d 859, 834 P.2d 119] (dis. opn. of Kennard, J.).)

The stipulation we have before us obviously did not comply with the requirement of rule 1620.7(g) that parties have the right to "select another neutral" when mediation is "combine[d]" with "other alternative dispute resolution (ADR) processes." Whether rule 1620.7 governs this case, however, is an issue which we have spared ourselves because we decide it on contract grounds: By using the term "binding mediation" the language of this contract is unenforceably vague.

Thus, in my view, regardless of whether this dispute is governed by the California Rules of Court, only a *clearly* written agreement *signed by the parties* can set forth a process whereby an unsuccessful settlement conference (or mediation) morphs into a de facto arbitration. The key to approval of such agreement is clarity of language and informed consent. We have neither here.

A petition for a rehearing was denied June 28, 2006.